IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| PATRICIA LOUISE REVERE,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>    Defendant. | Civil No. 3:17cv774 (DJN) |

## MEMORANDUM OPINION

On March 10, 2014, Patricia Louise Revere ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from dermatomyositis, asthma, anxiety, diverticulitis, and diabetes type II, with an alleged onset date of April 1, 2012. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by failing to adequately address rebuttal evidence and post-hearing objections to the vocational expert's testimony. (Br. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Br.") (ECF No. 14) at 3.) This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross-motions for summary judgment, rendering the

matter ripe for review.[1] For the reasons that follow, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 13), DENIES Defendant's Motion for Summary Judgment (ECF No. 19) and REVERSES and REMANDS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On March 10, 2014, Plaintiff filed applications for DIB and SSI with an alleged onset date of April 1, 2012. (R. at 276-82, 283-88.) The SSA denied these claims initially on September 9, 2014, and again upon reconsideration on December 4, 2014. (R. at 173-90, 203-11.) At Plaintiff's written request, the ALJ held a hearing on August 9, 2014. (R. at 41-108, 212-13.) On October 28, 2016, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 20-40.) On September 25, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

On September 25, 2018, the Court ordered Defendant to submit supplemental briefing explaining how ALJ's decision comported with the "show your work" principle set forth in *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 663 (4th Cir. 2017). Defendant submitted her supplemental brief (ECF No. 24) on October 2, 2018, and Plaintiff filed her response (ECF No. 25) on October 5, 2018.

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

2

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ

3

has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At any step, if the ALJ finds the claimant disabled or not disabled, the ALJ makes his determination or decision and thus does not go on to the next step. §§ 404.1520(a)(4), 416.920(a)(4).

### III. THE ALJ'S DECISION

On August 9, 2016, the ALJ held a hearing, during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 41-108.) On October 28, 2016, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 20-40.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 25-34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 1, 2012. (R. at 25.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: obesity, rheumatoid arthritis, osteoarthritis, dermatomyositis,[2] diverticulosis status post resection,[3] irritable bowel syndrome and ventral hernia with abdominal lesions with methicillin-resistant staphylococcus aureus ("MRSA"). (R. at 25-26.) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 28-29.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform sedentary work with additional limitations. (R. at 29.) Specifically, the ALJ limited Plaintiff to lifting five pounds frequently and ten pounds occasionally and to sitting for six hours and standing or walking for two hours in an eight-hour workday. (R. at 29.) Plaintiff could never climb ladders, ropes or scaffolding; however, she could occasionally crawl, crouch, bend, stoop and climb steps or ramps. (R. at 29.) Plaintiff also required ten minutes of rest every two hours and had to avoid exposure to heights and dangerous machinery. (R. at 29.) The ALJ further found that Plaintiff needed close access to a bathroom. (R. at 29.) The ALJ estimated that Plaintiff would be off task 10 percent of the time and miss twelve days of work a year. (R. at 29.)

---

[2] Patients with dermatomyositis experience inflammation and discoloration of the skin, especially on the knees, elbows and knuckles, often in the form of a rash. *Dermatomyositis*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

[3] Diverticulum describes circumscribed pouches or sacs of variable size that grow along tubular organs like the intestines, causing pain. *Diverticulum*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

At step four, the ALJ found that Plaintiff could perform past relevant work as a medical receptionist and registration coordinator. (R. at 34.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 29.)

IV. ANALYSIS

Plaintiff, fifty-four years old at the time of this Memorandum Opinion, previously worked as a medical receptionist and registration coordinator. (R. at 34, 53, 303.) She applied for Social Security benefits, alleging disability from dermatomyositis, asthma, anxiety, diverticulitis and diabetes type II, with an alleged onset date of April 1, 2012. (R. at 302.) Plaintiff's appeal to this Court alleges that the ALJ erred by failing to adequately address rebuttal evidence and post-hearing objections to the VE's testimony. (Pl.'s Br. at 3.) For the reasons set forth below, the ALJ erred in his decision.

### A. The ALJ Did Not Err by Failing to Adequately Discuss Plaintiff's Objections.

Plaintiff argues that the ALJ failed to properly explain his decision for denying the five objections raised by Plaintiff in her post-hearing brief. (R. at 434-40; Pl.'s Br. at 4-10.) Defendant maintains that the ALJ appropriately denied Plaintiff's objections. (Br. Supp. Def.'s Mot. for Summ. J. ("Def.'s Br.") (ECF No. 19) at 11.)

When objecting to a VE's testimony, a plaintiff must raise the argument during the hearing or risk waiving it. *See Sayre v. Chater*, 113 F.3d 1232 (Table), 1997 WL 232305, at *2 (4th Cir. May 8, 1997) (finding plaintiff's "broadside attack on the [VE]'s testimony" waived where plaintiff failed to raise the issue with either the ALJ or the Appeals Council); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447-48 (2d Cir. 2012) (finding no error where ALJ issued opinion without directly addressing objections raised by plaintiff in a post-hearing

6

brief, because plaintiff's "attorney had a full opportunity to explain his objections in significant detail. Nothing more was required."); *Wilkins v. Barnhart*, 69 F. App'x 775, 782 (7th Cir. 2003) (finding plaintiff's argument about inappropriate hypothetical question waived when plaintiff cross-examined VE during hearing and never raised the issue); *Hammond v. Chater*, 116 F.3d 1480 (Table), 1997 WL 338719, at *3 (6th Cir. June 18, 1997) (finding plaintiff's objection about skill level of jobs listed by VE waived, because plaintiff failed to raise issue during hearing).

The Fourth Circuit has yet to specifically address whether the ALJ must rule on all post-hearing objections, but district courts within this circuit have consistently held that ALJs need not address such objections. In *Looney v. Berryhill*, for example, this Court held that "[t]he ALJ had no duty to address those objections that Plaintiff made only in his post-hearing brief." 2018 WL 3826778, at *13 (E.D. Va. Aug. 10, 2018); *see also Rogers v. Berryhill*, 2018 WL 1308952, at *4 (W.D.N.C. Mar. 13, 2018) (remanding and instructing ALJ to review Plaintiff's post-hearing objections only because the parties' made faulty arguments to the court and numerous other mistakes in reviewing the record); *Jenkins v. Colvin*, 2016 WL 4373701, at *8 (W.D.N.C. Aug. 12, 2016) (finding that the plaintiff waived his post-hearing objection to VE testimony, because the plaintiff had the opportunity to challenge VE's testimony during the hearing and failed to do so). District courts in other circuits have concurred. *See Curtis B. v. Comm'r of Soc. Sec.*, 2018 WL 4735624, at *5 (W.D. Wash. Oct. 2, 2018) (finding no error where ALJ's opinion did not address plaintiff's post-hearing objections, because "by accepting the VE hearing testimony, the ALJ necessarily rejected plaintiff's post-hearing submissions"); *Green v. Berryhill*, 2018 WL 1278433, at *8 (S.D. Ala. Mar. 12, 2018) (affirming ALJ's decision despite ALJ's failure to address post-hearing objections).

Here, Plaintiff's counsel questioned the VE during the hearing about the percentage of time that the VE dedicated to placing disabled individuals in the occupational setting, as well as what in the VE's training and experience qualifies him to reach conclusions about the number of jobs available in the national economy. (R. at 99.) As to the first question, the VE responded that he spent less than ten percent of his practice placing disabled persons in jobs. (R. at 99.) As to the second question, the VE responded that he identified the number of jobs available in the national economy using the Dictionary of Occupational Titles ("DOT"), as well as data from the U.S. Department of Labor, Bureau of Labor Statistics, the Revised Classifications of Jobs (a job-analyzing handbook), databases from Salary Assessor and U.S. Publishing and Job Browser. (R. at 99-100.) Plaintiff's counsel objected to the VE's testimony on the grounds that (1) the VE's experience with job placement of disabled individuals did not qualify him as an expert in this case and (2) the VE could not identify the number of jobs available in the national economy. (R. at 100-01.) The ALJ noted and overruled the objection. (R. at 101.)

Plaintiff requested that the ALJ leave the record open after the hearing so that she could submit any missing medical records in a post-hearing brief. (R. at 52.) On September 9, 2016, Plaintiff submitted a post-hearing brief, objecting to the VE's testimony on the following five grounds: (I) the VE answered hypotheticals about an individual requiring close access to a restroom, which constitutes an accommodation under the Americans with Disabilities Act ("ADA") and violates SSR 00-1c ("objection I"); (II) the record failed to establish the VE's expertise regarding the number of jobs available in the economy ("objection II"); (III) the VE used improper sources to support his testimony regarding the number of jobs available in the economy ("objection III"); (IV) in identifying Step Five jobs, the VE failed to consider that Plaintiff's skills from her past work did not constitute transferable skills ("objection IV"); and

8

(V), Plaintiff required a supplemental hearing to address "evidentiary and vocational inconsistencies" ("objection V"). (R. at 434-40.)

In his decision, the ALJ denied Plaintiff's post-hearing objections to the VE's testimony. (R. at 23.) Citing the entirety of Plaintiff's post-hearing brief, the ALJ stated that "[a]fter review of the record and the vocational expert's testimony, the undersigned denies the claimant's objection to the vocational expert testimony[.]" (R. at 23 (citing Exhibit 22E).)

### 1. Plaintiff waived post-hearing brief objections I, IV and V by failing to raise them during the hearing with the ALJ.

Despite having the opportunity to question the VE and object to his testimony, Plaintiff failed to raise objections I, IV and V during the hearing before the ALJ. Plaintiff urges this Court not to penalize her for failing to raise all of her objections during the hearing, because the nature of administrative hearings makes it impossible for a claimant or her counsel to prepare to cross-examine the testifying VE. (Pl.'s Br. at 13.) Plaintiff explains that "in almost every case," the ALJ does not reveal the hypotheticals that he plans to use, which results in "surprise testimony" by the VE. (Pl.'s Br. at 13.) Moreover, Plaintiff complains that the VE's reliance on the DOT ("a copious document, containing narrative descriptions of over 12,000 jobs") further frustrates the claimant's ability to compose objections to the VE's testimony. (Pl.'s Br. at 13-14 ("It is simply not reasonable to expect that, in the waning moments of the hearing, with no notice of what a [VE] might say, when the [VE] . . . relied on a source with 12,000 complex descriptions of a jobs . . . that a representative can effectively raise every possible issue without first consulting the source materials.").)

While the Court sympathizes with Plaintiff about the challenges that a claimant and her representative may face in preparation for and during an administrative hearing, the Court will not abandon its decision in *Looney*, which held that an ALJ need not address objections raised

only in a post-hearing brief. 2018 WL 3826778, at *13. As explained above, courts have consistently found that a plaintiff waives her post-hearing objections to a VE's testimony when she has the opportunity to question the VE at the hearing and fails to do so. *Brault*, 683 F.3d at 447-48; *Wilkins*, 69 F. App'x at 782; *Hammond*, 1997 WL 338719, at *3; *Curtis B.*, 2018 WL 4735624, at *5; *Green*, 2018 WL 1278433, at *8; *Jenkins*, 2016 WL 4373701, at *8. Plaintiff had the opportunity to raise objections I, IV and V with the VE at the hearing and failed to do so. Accordingly, the ALJ did not err by failing to elaborate on his decision to overrule objections I, IV and V raised in Plaintiff's post-hearing brief.

Plaintiff's argument that that the ALJ had an obligation to "[r]ule on any objection(s)" pursuant to the § I-2-6-74(B) of the Hearings, Appeals and Litigation Law Manual ("HALLEX") likewise lacks merit. (Pl.'s Br. at 5.) Courts have established that intra-agency manuals such as HALLEX do not bind government agencies. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) ("the Claims Manual is not a regulation. It has no legal force and does not bind the SSA. Rather, it is a 13-volume handbook for internal use by thousands of SSA employees."). As this Court has previously held, "interpretations contained in policy statements, agency manuals and enforcement guidelines [including HALLEX] lack the force of law." *Parham v. Colvin*, 2015 WL 1649143, at *15 (E.D. Va. Apr. 13, 2015) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)), *rev'd and remanded on other grounds sub nom. Parham v. Comm'r of Soc. Sec.*, 627 F. App'x 233 (4th Cir. 2015); *see also Looney*, 2018 WL 3826778, at *13 (citing *Parham*, 2015 WL 1649143, at *15, for the proposition that the HALLEX lacks the force of law).[4] Other

---

[4] Plaintiff cites SSR 13-2p for the proposition that an ALJ must "follow all Agency policies, including [the] HALLEX." (Pl.'s Br. at 6); *see* SSR 13-2p § 15(a) ("We require adjudicators at all levels of the administrative review to follow agency policy, as set out in the Commissioner's regulations . . . and [the HALLEX]."). However, SSR 13-2p addresses how the

10

district courts in the Fourth Circuit have also held that the HALLEX does not create judicially enforceable rights. *Young v. Colvin*, 2014 WL 1874984, at *3 (W.D.N.C. May 9, 2014); *Shrader v. Astrue*, 2013 WL 1192315, at *3 (N.D. W. Va. Mar. 22, 2013); *Harris v. Astrue*, 2012 WL 7785082, at *6 (N.D. W. Va. Nov. 30, 2012), *report & recommendation adopted*, 2013 WL 1187151 (N.D. W. Va. Mar. 21, 2013); *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009). Accordingly, the ALJ did not err by failing to rule on Plaintiff's post-hearing objections I, IV and V.

### a. The ALJ Did Not Violate SSR 00-1c by including a close access to a restroom requirement in the hypothetical posed to the VE.

With respect to objection I, Plaintiff additionally argues that the ALJ violated SSR 00-1c by including a "close restroom access" requirement in a hypothetical posed to the VE, as such a requirement constitutes a reasonable accommodation that the ALJ cannot consider. (Pl.'s Br. at 11.) Plaintiff asserts that "moving to different office space . . . [or] reconfiguring work spaces" constitutes a "reasonable accommodation" under the ADA, and that SSA regulations preclude an ALJ from considering potential reasonable accommodations when making a disability determination. (Pl.'s Br. at 10-11.) Defendant counters that common workplace knowledge "establishes that access to a bathroom in a medical office building does not require a special 'reasonable accommodation[;]'" therefore, the ALJ could question the VE about the need to have close access to a restroom. (Def.'s Br. at 11.)

During the hearing, the ALJ posed a hypothetical to the VE, asking the VE to imagine someone of Plaintiff's age, education and work experience and with Plaintiff's RFC, including her need for close access to a restroom. (R. at 94-95.) The ALJ asked if such an individual

---

SSA evaluates cases involving drug addiction and alcoholism — neither of which are relevant in this case. Moreover, SSR 13-2p does not negate the precedent discussed above.

11

could perform Plaintiff's past relevant work, to which the VE responded affirmatively. (R. at 95, see R. at 29 (Plaintiff's RFC).) The VE based his answer on the DOT and his own experience. (R. at 98.) Accordingly, the ALJ included the close restroom access requirement in Plaintiff's RFC and adopted the VE's opinion that Plaintiff could perform her past relevant work; and thus, did not qualify as disabled under the Act. (R. at 29, 34.)

The sole source of authority for Plaintiff's argument stems from SSR 00-1c. (Pl.'s Br. at 10-11.) However, Plaintiff misinterprets the holding of SSR 00-1c, which simply articulates SSA policy following *Cleveland v. Policy Management Systems Company*, 526 U.S. 795 (1999). In that case, the Supreme Court held that a plaintiff may simultaneously bring an ADA claim against a former employer and a claim of total disability with the SSA without conceding on either claim. *Id.* at 802-06. Adopting the holding of *Cleveland*, SSR 00-1c prohibits courts from applying "a special negative presumption" to a plaintiff's ADA claim based on the plaintiff's receipt of, or application for, benefits from the SSA. *See* SSR 00-1c (explaining that SSA and ADA claims can "comfortably" co-exist). The ruling does not state, or even suggest, that the inclusion of a "reasonable accommodation" in an ALJ's hypothetical question renders that hypothetical invalid. SSR 00-1c. Moreover, the Fourth Circuit has recognized the validity of including restroom-access requirements in hypotheticals posed to VEs. *See Rogers v. Barnhart*, 216 F. App'x 345, 348 (4th Cir. 2007) (affirming ALJ's reliance on VE's testimony concerning a bathroom requirement). In fact, ALJs frequently include restroom-access requirements in their hypotheticals, which courts have consistently allowed. *See, e.g., Jones v. Colvin*, 2013 WL 5574425, at *2 (S.D. Ga. Oct. 8, 2013) (affirming the ALJ's finding that plaintiff required close access to a bathroom); *Butler v. Astrue*, 773 F. Supp. 2d 975, 979 (D. Or. 2011) (same); *Booker v. Astrue*, 2009 WL 1886134, at *28 (D. Minn. June 30, 2009) (same).

Because Plaintiff misconstrues the holding in SSR 00-1c, and because courts have continually upheld the inclusion of restroom-access requirements in hypotheticals, the ALJ did not err by including such a requirement in the hypothetical posed to the VE or Plaintiff's ultimate RFC.

### 2. The ALJ is Not Required to Rule upon Post-Hearing Objections that are Relevant Only to a Step-Five Determination.

Plaintiff's remaining post-hearing objections — objections II and III — challenge the VE's "purported expert testimony" regarding job incidence in the local, regional or national economy and the sources that the VE relied on to supply such information. (R. at 435-38.) During the hearing, Plaintiff, through counsel, also objected to the VE's ability to identify the number of jobs available in the national economy, and the ALJ noted the objection for the record and overruled it. (R. at 100-01.) Thus, Plaintiff did not waive objections II and III — to the extent that the subject matter of those objections overlaps with the objection that Plaintiff properly raised during the hearing before the ALJ.

Again, Plaintiff argues that the ALJ failed to provide any explanation as to why he denied objections II and III. (Pl.'s Br. at 13.) Defendant asserts that, because the ALJ decided this case at step four of the sequential analysis, Plaintiff's objections related to step five — including objections II and III — prove irrelevant. (Def.'s Br. at 11.) The Court agrees with Defendant. Plaintiff's remaining objections lack relevance to the ALJ's ultimate decision; thus, the ALJ did not err by failing to discuss them.

The Code of Federal Regulations provides that:

> The sequential evaluation process is a series of five 'steps' that [ALJs] follow in a set order. . . . If [an ALJ] can find that [a claimant is] disabled or not disabled at a step, [the ALJ] make[s his or her] determination or decision and *[does] not go on to the next step*. If [an ALJ] cannot find that [the claimant is] disabled or not disabled at a step, [the ALJ goes] on to the next step.

13

20 C.F.R. §§ 404.1520(4), 416.920(4) (emphasis added). "[A]t step four of the evaluation process . . . [a]ll that is necessary is an inquiry into whether a claimant is capable of performing his past relevant work." *Rogers v. Barnhart*, 216 F. App'x 345, 349 (4th Cir. 2007) (noting that "any consideration of whether the claimant's past relevant work is still in existence is irrelevant"); *see also Barnhart v. Thomas*, 540 U.S. 20, 25 (2003) ("[S]tep four can result in a determination of no disability without inquiry into whether the claimant's previous work exists in the national economy"). Indeed, "the regulations reserve inquiry into the national economy for step five." *Thomas*, 540 U.S. at 25.

Here, at step four, the ALJ found that Plaintiff could perform her past relevant work as a medical receptionist and registration coordinator; thus, Plaintiff did not qualify as disabled under the Act. (R. at 34.) Accordingly, the ALJ did *not* proceed to step five of the sequential analysis to determine if Plaintiff could adjust to other work existing in significant numbers in the national economy. (R. at 29); §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). Because Plaintiff failed to object to the ALJ's findings at step four, Plaintiff's post-hearing objections related to the VE's ability to identify jobs existing in the national economy prove irrelevant. Thus, the ALJ did not err by failing to explain his reasoning for denying Plaintiff's objections II and III.[5]

## B. The ALJ Erred by Failing to Adequately Discuss Plaintiff's Rebuttal Vocational Report

Lastly, Plaintiff argues that the ALJ's opinion failed to sufficiently address the report of vocational rehabilitation counselor Heather Fahey, M.S.W. (the "Fahey Report"), which Plaintiff

---

[5] Plaintiff's post-hearing objection IV about transferability of skills also relates to a step five finding only. Thus, even if Plaintiff did not waive objection IV by failing to raise it at the hearing, the ALJ would not have had to discuss the objection further in his opinion.

14

presented to the ALJ after the hearing. (R. at 475-78; Pl.'s Br. at 8-10.) Plaintiff asserts that the Fahey Report directly contradicts the VE's testimony, which the ALJ relied on to make his step four finding that Plaintiff could perform her past relevant work. (Pl.'s Br. at 9.) Plaintiff claims that the ALJ erred, because he did not provide any rationale for rejecting the Fahey Report. (Pl.'s Br. at 3, 9.) In response, Defendant argues that the ALJ "discussed [the Fahey Report] in [his] decision and specifically denied the objections." (Def.'s Br. at 11.) Thus, the ALJ did not err. (Def.'s Br. at 9-11.)

While the ALJ need not address post-hearing objections that a claimant failed to raise during the hearing, the ALJ does have a clear duty "to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This Court has previously explained that "[i]f a plaintiff raises a valid post-hearing objection that provides a contrary opinion to the VE's testimony, the ALJ can evaluate the conflicting opinions and reach a conclusion *as long as the ALJ provides some explanation for his decision.*" *Looney*, 2018 WL 3826778, at *11 (emphasis added); *see also Rosado v. Berryhill*, 2018 WL 816578, at *14 (E.D. Va. Jan. 22, 2018) (finding that ALJ adequately explained his reliance on VE's testimony over another expert opinion when ALJ found VE's testimony "more persuasive and consistent with reality"); *Reeves v. Berryhill*, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017) ("ALJ's protracted explanation for why she relied upon [testifying VE's] opinion . . . was more than adequate to support that reliance"); *McCaffrey v. Colvin*, 978 F.Supp. 2d 88, 92 (D. Mass. 2013) (finding that ALJ "simply d[id] his job, which is to weigh credibility, resolve conflicting evidence, and draw inferences from the evidence in record" when he preferred the opinion of one VE over another).

Less than one month after Plaintiff's hearing, Ms. Fahey reviewed Plaintiff's record to determine whether someone with Plaintiff's RFC could perform sustained work. (R. at 476.) Ms. Fahey concluded that such an individual could not perform any sustained work, because they "could not make it through a probationary period with an employer as new employees are not allowed to miss work during probationary periods. If they miss one day a month they will be missing possibly three days during the probationary period." (R. at 476.) In his opinion, the ALJ stated that he received the Fahey Report and denied Plaintiff's objections "[a]fter review of the record and the vocational expert's testimony." (R. at 23.)

Defendant relies on *Reeves v. Berryhill* to argue that the ALJ in this case rightly rejected the Fahey Report, which "focused on the anticipated actions of prospective employers, rather than the functional capacity of Plaintiff." (Def.'s Br. at 9-10.) Similar to the facts here, *Reeves* involved a post-hearing report from Paula Santagati (the "Santagati Report"), a vocational rehabilitation counselor, who concluded that Reeves could not perform any of the jobs identified by the VE during Reeves's hearing. 2017 WL 3433706, at *11. The court in *Reeves* concluded that the ALJ's explanation "was more than adequate to support [the ALJ's reliance on the VE's testimony]." *Id.* Specifically, the ALJ discussed the VE's "extensive professional experience including more than 30 years as a vocational expert appearing before the Social Security Administration, and her numerous certifications in vocational rehabilitation, disability management, and rehabilitation counseling." *Id.* The ALJ in *Reeves* further discussed the VE's use of the OccuBrowse program "to buttress her opinion on the nature of the jobs the [p]laintiff could perform[.]" *Id.* Thus, the court deemed the ALJ's rationale for accepting the VE's testimony over the Santagati Report "logical and sufficient." *Id.*

Here, the ALJ's opinion contains no such explanation. Rather, the ALJ simply stated that he received the Fahey Report and summarily denied Plaintiff's objections. (R. at 23.) Later in his opinion, the ALJ cited to the VE's testimony to support his conclusion that Plaintiff can perform her past relevant work, but unlike the ALJ in *Reeves*, the ALJ here provided no explanation as to why he credited the VE's testimony over the Fahey Report or any other conflicting evidence. (R. at 23, 34); *Reeves*, 2017 WL 3433706, at *11.

Believing that the ALJ's handling of the Fahey Report required further argument, on September 25, 2018, the Court ordered supplemental briefing from the parties. (ECF No. 23.) Specifically, the Court ordered Defendant to explain how the ALJ's rejection of the Fahey Report comports with the "show your work" principle set forth in *Patterson*, 846 F.3d at 663. In her supplemental brief, Defendant argues that substantial evidence supports the ALJ's opinion. (Def.'s Suppl. Br. (ECF No. 24) at 1.) Further, Defendant asserts that "the ALJ considered the live testimony of [the VE] and the one-page report submitted by Ms. Fahey, and agreed with [the VE's] conclusion that Plaintiff could perform her [past work]." (Def.'s Suppl. Br. at 4.)

After considering Defendant's supplemental argument, the Court nonetheless finds that the ALJ's decision does not comply with the Fourth Circuit's mandate that ALJs must "[s]how [their] work." *Patterson*, 846 F.3d at 663. In *Patterson*, the Fourth Circuit found that "the ALJ . . . did not address conflicting evidence, or explain away contrary findings of other doctors in a comprehensive manner." *Id.* at 662. Ultimately, the *Patterson* court admonished ALJs to follow the principle that "they have no doubt heard since their grade-school math classes: Show your work." *Id.* at 663 (citations omitted).

Like the ALJ in *Patterson*, the ALJ here did not provide sufficient explanation — he merely acknowledged the Fahey Report and denied its credibility without any substantive

17

discussion. (R. at 23); *cf. Slone v. Berryhill*, 2018 WL 5729591, at *4 (N.D. Ind. Nov. 1, 2018) (finding that ALJ sufficiently addressed post-hearing objections and Santagati Report by "penn[ing] two full pages" on claimant's post-hearing memorandum"). And when the ALJ later discussed the VE's testimony in support of his step-four conclusion, he again failed to provide *any* reason — e.g., the VE's education, training or experience — as to why he adopted the VE's testimony over the Fahey Report and any other conflicting evidence. (R. at 34.) This lack of explanation requires remand. *Patterson*, 846 F.3d at 663; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required.").

Although Defendant argues that substantial evidence supports the ALJ's treatment of the Fahey Report, (Def.'s Br. at 8), without any explanation of the ALJ's reasoning, "Defendant's argument at this point consists of mere speculation and an invitation to this Court to engage in conjecture, which the Fourth Circuit has repeatedly criticized." *Bisceglia v. Colvin*, 173 F. Supp. 3d 326, 333 (E.D. Va. 2016). This Court will not serve as the fact-finder and resolve *sua sponte* the conflicting evidence presented by the VE and Ms. Fahey — that job belongs to the ALJ, who must show his work. *Patterson*, 846 F.3d at 663; *see also Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) ("[O]ur circuit precedent makes clear that it is not [the reviewing courts] role to . . . hypothesize the ALJ's justifications that would perhaps find support in the record."); *Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) ("Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert . . ."); *Bisceglia*, 173 F. Supp. 3d at 333 ("[T]he duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts.").

Accordingly, the Court remands this matter for further consideration and explanation of the Fahey Report.

V. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 13), DENIES Defendant's Motion for Summary Judgment (ECF No. 19), and REVERSES and REMANDS the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

An appropriate Order consistent with this Memorandum Opinion shall issue. Let the Clerk forward a copy of this Opinion to all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: January 3, 2019